FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MAR 3 - 2006

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ALEXANDER C. CULLISON,

Petitioner.

Crim. No. 93-117

## MEMORANDUM OPINION

Pending before the Court is the petitioner's Motion for Relief from Disability Under 29 U.S.C. § 504. After carefully reviewing and considering the parties' legal briefs,[1] the arguments presented at the hearing held on February 1, 2006, and the entire record in this case, the Court will deny the motion for the reasons that follow.

### BACKGROUND

On July 5, 1995, after a lengthy jury trial, petitioner Alexander Cullison was convicted of

---

[1] Attorneys representing both the United States Department of Justice and the United States Department of Labor received notice of the petitioner's motion in accordance with 29 U.S.C. § 504(a) and entered appearances in this case. Counsel from these two agencies elected to combine their efforts by filing all legal briefs jointly. Accordingly, for convenience, the Court hereafter will refer to the two agencies jointly as "the Government."

The legal issues were briefed in the following filings submitted by the parties and reviewed by the Court: Defendant's Motion for Relief from Disability Under 29 U.S.C. § 504, Joint Memorandum of Departments of Labor and Justice in [] Opposition to Defendant's Request for Reduction of Disability Under 29 U.S.C. § 504, Defendant's Reply to Government's Opposition to Initial Motion for Relief from Disability Under 29 U.S.C. § 504, Joint Response of Departments of Labor and Justice to Defendant's Reply, Defendant's Supplemental Memorandum in Support of Initial Motion for Relief from Disability Under 29 U.S.C. § 504, and Joint Response of Departments of Labor and Justice to Defendant's Surreply.



violating the Racketeer Influenced and Corrupt Organization ("RICO") Act, RICO conspiracy, mail fraud, conspiracy to extort and extortion in violation of 18 U.S.C. §§ 1962(c)-(d), 1341 and 1951 for using his official position at the Marine Engineers Beneficial Association ("MEBA")[2] to extort from its members contributions to a political action fund and election ballots used to fix union elections.[3] After his trial and conviction, the petitioner entered into a cooperation agreement with the Government according to which he helped secure guilty pleas from a number of co-defendants. Nearly five years later, he was sentenced by the court to one year of unsupervised release for each count of the indictment for which he was convicted, to be served concurrently.[4] He also was ordered to make restitution to MEBA in the amount of $114,520.10.

Because the petitioner was convicted of crimes evidencing an abuse or misuse of a position or employment in a labor organization,[5] he is subject to Section 504 of the Labor-Management Reporting and Disclosure Act (the "Act"), codified at 29 U.S.C. § 504, which prohibits him from engaging in certain proscribed employment activities involving labor organizations for a period of 13 years after his conviction. The petitioner now seeks relief from the effect of this federal statute so he may engage in what otherwise might be prohibited employment. The petitioner argues that the court should relieve him from the statutory employment disqualification because doing so "would serve the purposes of the Act, as his

---

[2]  MEBA is the largest maritime union in the United States.

[3]  The particulars of the criminal activities are summarized in United States v. Defries, 129 F.3d 1293 (D.C. Cir. 1997).

[4]  The petitioner's sentencing was delayed for several years while he cooperated with the Government.

[5]  The petitioner did not dispute the fact that his crimes involved the abuse of his position at MEBA or that MEBA qualifies as a "labor organization" for the purpose of determining whether 29 U.S.C. § 504 applies to him.

rehabilitation has been so successful that his extensive knowledge and experience would be of great service to the labor community." Pet'r Mot. 2. The Government opposes the petitioner's request on the ground that the petitioner "has not demonstrated that he is sufficiently rehabilitated such that he can be entrusted to assume the positions covered by section 504." Gov't Opp. 1.

## DISCUSSION

### I. Section 504 of the Labor-Management Reporting and Disclosure Act of 1959

Congress enacted the Labor-Management Reporting and Disclosure Act as remedial legislation intended to combat union corruption and protect the rights of union members. See, e.g., Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aero. Workers, 201 F.3d 517, 518 (4th Cir. 2000) (noting that "Congress enacted the LMRDA in 1959 to protect 'the rights and interests' of union members against abuses by unions and their officials."). The statute was a reaction to "a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct" and was deemed necessary to protect "the rights and interests of employees and the public generally as they relate to the activities of labor organizations, employers, labor relations consultants, and their officers and representatives." 29 U.S.C. § 401(b). Accordingly, Congress enacted the provisions of the statute to "eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives." Id. at § 401(c).

Section 504(a) of the statute attempts to further this purpose by preventing individuals convicted of specified crimes from pursuing employment with labor organizations in certain enumerated capacities. Id. at § 504(a). That section of the statute states:

> No person . . . who has been convicted of . . . robbery, bribery, extortion, embezzlement, grand larceny, burglary, arson, violation of narcotics laws, murder, rape assault with intent to kill, assault which inflicts grievous bodily injury, or . . . any felony involving abuse or misuse of such person's position or employment in a labor organization . . . to seek or obtain an illegal gain at the expense of the members of the labor organization . . . or conspiracy to commit any such crimes or attempt to commit any such crimes, or a crime in which any of the foregoing crimes is an element, shall serve or be permitted to serve –
>
> (1) as a consultant or advisor to any labor organization,
>
> (2) as an officer, director, trustee, member of any executive board or similar governing body, business agent, manager, organizer, employee, or representative in any capacity of any labor organization,
>
> (3) as a labor relations consultant or advisor to a person engaged in an industry or activity affecting commerce, or as an officer, director, agent, or employee of any group or association of employers dealing with any labor organization, or in a position having specific collective bargaining authority or direct responsibility in the area of labor-management relations in any corporation or association engaged in an industry or activity affecting commerce, or
>
> (4) in a position which entitles its occupant to a share of the proceeds of, or as an officer or executive or administrative employee of, any entity whose activities are in whole or substantial part devoted to providing goods or services to any labor organization, or
>
> (5) in any capacity, other than in his capacity as a member of such labor organization, that involves decisionmaking authority concerning, or decisionmaking authority over, or custody of, or control of the moneys, funds, assets, or property of any labor organization,
>
> during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later, unless the sentencing court on the motion of the person convicted sets a lesser period of at least three years after such conviction or after the end of such imprisonment, whichever is later, or unless prior to the end of such period, in the case of a person so convicted or imprisoned, (A) his citizenship rights, having been revoked as a result of such conviction, have been fully restored, or (B) if the offense is a Federal offense, the sentencing judge or, if the offense is a State or local offense, the United States district court for the district in which the offense was committed, pursuant to sentencing guidelines and policy statements under section 994(a) of title 28, United States Code, determines that such person's service in any capacity referred to in clauses (1) through (5) would not be contrary to the purposes of this Act.

29 U.S.C. § 504(a). Thus, the statute prohibits an individual convicted of any of the identified

4

crimes from serving in the positions enumerated in paragraphs (1) through (5) for a period of 13 years after conviction. Id. The statute goes on to state that "a person shall be deemed to have been 'convicted' and under the disability of 'conviction' from the date of the judgment of the trial court, regardless of whether that judgment remains under appeal." Id. at § 504(c). As applied to the petitioner's case, this means that the employment disqualification took effect on January 6, 1999, which was the date his sentence was imposed and judgment was entered.[6]

Although apparent from the language of the statute quoted above, it is worthwhile to note that the statute's employment disqualification may apply to someone who has been convicted of a crime that has absolutely nothing to do with labor organizations and is not a federal crime. See, e.g., In re Petition of Belpedio, 753 F. Supp. 239 (N.D. Ill. 1990) (applying § 504(a) to a petitioner who was convicted of committing aggravated battery during an altercation at a football game). For example, someone convicted under state law of robbing a convenience store will be subject to the federal statute -- and prohibited from engaging in the proscribed activities involving labor organizations -- regardless of the fact that the robbery was unrelated to any

---

[6] The Court observes that the statute appears to unfairly penalize a defendant who cooperates with the Government, as the petitioner did in the instant case. It is standard procedure for the Government and the defendant to request that sentencing be delayed while a defendant cooperates in other criminal investigations in the hope of securing the Government's recommendation for a downward departure from the United States Sentencing Commission Guidelines based on that cooperation. Consequently, sentencing and subsequent entry of judgment against a cooperating defendant might not occur for months, or even years, as was the case here. The problem is that the statute is structured to take effect on the date judgment is entered and not on the date of conviction. The incongruous result is that a non-cooperating defendant, who typically will proceed more quickly to sentencing and judgment, actually labors under the employment disqualification for a shorter duration than a defendant who cooperates with the Government to aid its investigation of other crimes. The practical effect of this flaw is that the statute creates a disincentive for a defendant to cooperate, which is both illogical and unfortunate.

involvement in a labor organization. Indeed, it is of no consequence whether the person subject to the statute was a member of a labor organization at the time the crime was committed. The point is that Congress intended to secure high standards of responsibility and ethical conduct in labor organizations by locking out, at least for a period of 13 years after conviction, those people who demonstrate an inability to abide by such standards, as evidenced by their commission of one of the specified crimes. It happens that, in this case, the petitioner was convicted of crimes that he committed while acting as an official for a labor organization, which is precisely the type of activity the statute is directed against.

## II.   Petitioner's Motion to Reduce the Duration of the Statutory Employment Disqualification

The employment disqualification imposed by 29 U.S.C. § 504(a) is not absolute. The statute provides several methods to seek relief from its effect. In this case, the parties agree that the statute affords the petitioner three procedures to pursue relief by:

(1) petitioning the sentencing court to reduce the duration the statute applies

(2) obtaining full restoration of citizenship rights, or

(3) petitioning for an exemption based on the Court's determination that the petitioner's service in the prohibited capacities does not violate the purposes of the Act.

Gov't Opp. 5; Pet'r Reply 2. See also 29 U.S.C. § 504(a); United States Sentencing Commission, GUIDELINES MANUAL, § 5J1.1 (2004) (hereinafter referred to as the "Sentencing Guidelines"). Although initially it appeared from the petitioner's motion that he might be seeking relief in the form of an exemption,[7] during further briefing and the arguments made at the

---

[7] The petitioner argued in his motion that he "is prohibited from engaging in labor activities for a period of thirteen years following his conviction, 'unless prior to the end of such period . . . the United States district court for the district in which the offense was committed, pursuant to sentencing guidelines and policy

6

hearing he confirmed that he was seeking a reduction in the duration of the employment disqualification so that he would not be subject to it for the full 13 years. The petitioner also filed a "supplemental" legal memorandum "to bring to the Court's attention the fact that his civil rights have been restored" by the Governor of Virginia, which he argues "supports granting his reduction motion." Pet'r Suppl. Mem. Supp. Mot. 1. As a consequence, it appears that the petitioner also is seeking to invoke the statute's provision promising automatic relief when citizenship rights have been fully restored, an issue the Court addresses infra.

As an initial matter, the parties dispute the legal standard that applies to the petitioner's request for a reduction in the duration of the employment disqualification imposed by § 504(a) but agree that the statute is silent about this question[8] and that he likely must demonstrate some degree of rehabilitation to secure relief.[9] The petitioner argues that the correct standard to apply

---

statements under section 994(a) of Title 28, determines that such person's service in any capacity referred to in clauses (1) through (5) would not be contrary to the purposes of this chapter.'" Pet'r Mot. 2. The portion of the statute the petitioner quoted sets forth the standard applicable to a request for an exemption from the employment disqualification, not a reduction.

[8] Gov't Resp. 2 (acknowledging that "section 504 provides no express standard for reduction of the length of the disability and few decisions that directly address the issue"); Cullison Reply 3 (noting that "[t]he interpretive problem here is that – unlike for exemption petitions – Congress did not expressly state: (1) the elements reduction movants must prove (e.g., that he or she has been rehabilitated, that thirteen years is too harsh, or that his or her particular circumstances necessitate a reduction), or (2) the burden of proof reduction movants must satisfy (e.g., proof by a preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt)").

[9] As stated previously, the petitioner argued in his motion that "his rehabilitation has been so successful that his extensive knowledge and experience would be of great service to the labor community." Pet'r Mot. 2; see also Pet'r Reply 2 (arguing that "thirteen years' employment disqualification is too harsh for Dr. Cullison . . . because his rehabilitation (which began following his trial in 1995) is complete"). Implicit in this argument is the petitioner's understanding that rehabilitation is, at a minimum, one factor the Court should consider to assess

to his reduction motion "is that [he] bears the burden of showing, by a preponderance of the evidence, that the thirteen year default maximum disqualification period is too harsh." Pet'r Reply 1-2. The petitioner argues that because the statute expresses no congressional intent with regard to the elements he must prove or the burden of proof, Congress's silence "preserved the Court's discretion to consider the totality of reduction movants' circumstances." Id. at 4. The petitioner further argues that "Congress understood its silence about the burden of proof for reduction motions would mean the default burden of proof for a sentencing court's decision to grant a reduction motion would be by a preponderance of the evidence." Id. at 4-5 (citing United States v. Stover, 329 F.3d 859, 871 (D.C. Cir. 2003), in which the court observed that "[f]acts at sentencing must be proven by a preponderance of the evidence") (emphasis omitted).

The Government, on the other hand, argues that "a disqualified person seeking . . . a reduction bears a heavy burden, and must demonstrate that he has been sufficiently rehabilitated to be trusted with service in all prohibited positions following any reduction order." Gov't Opp. 6. The Government argues that an order reducing the period of employment disability is analogous to an order granting an exemption under 29 U.S.C. § 504(a)(B);[10] therefore, the Court should apply the statute's standard for exemption requests, which mandates that the Court make a determination that the petitioner's employment would not be contrary to the purposes of the statute in light of the sentencing guidelines and policy statements expressed in 28 U.S.C.

---

entitlement to relief from § 504(a). The Government openly advocates that rehabilitation must be demonstrated. Gov't Opp. 6 (stating that "a disqualified person seeking such a reduction . . . must demonstrate that he has been sufficiently rehabilitated to be trusted with service in all prohibited positions following any reduction order").

[10]    Gov't Opp. 7 (arguing that "the Court may use the standard provided in section 504(a) governing exemptions as analogous, which directs the court to apply the sentencing guidelines and policy statements under 28 U.S.C. § 994(a)").

§ 994(a). Id. at 7. Accordingly, the Government points to the Sentencing Guideline's policy regarding exemptions from § 504(a), which states that "relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability." USSG § 5J1.1. The Government argues that this approach is supported by the decision in <u>Nass v. Local 348, Warehouse Prod., Sales and Serv. Employees Union</u>, 503 F. Supp. 217 (E.D.N.Y. 1980), aff'd mem. 657 F.2d 264 (2d Cir. 1981).[11]

---

[11] In that case, a state court in New York invoked a state statute to grant the defendant a certificate of relief from civil disabilities at the time he was sentenced for conspiracy to commit labor bribery. 503 F. Supp. at 218. When the Department of Justice later notified both the defendant and the employing labor union that the defendant's union position violated 29 U.S.C. § 504, the defendant filed suit seeking to enjoin the union from discharging him. Id. The district court considered "whether the certificate of relief from civil disabilities issued under New York Correction Law § 701 by the State court judge at the time [defendant] was sentenced on the criminal charges bars the application to [defendant] of 29 U.S.C. § 504." Id. To answer that question, the district court further considered "whether a State court's determination that an individual should not suffer the loss of certain rights following a conviction may override the intention of Congress to purge unions of illegal influences through the actions of their employees and officers." Id. at 219. After applying a preemption-type analysis, assessing whether there was some indication of rehabilitation at the time the defendant's certificate of relief was granted, and distinguishing case law the defendant cited in support of his claims, the district court ultimately concluded that "allow[ing] a certificate of relief from civil disabilities issued by the State concurrently with the pronouncement of sentence for a crime involving corruption of a union officer to bar the operation of § 504 would be to frustrate and override federal law in violation of the Supremacy Clause." Id. at 221. The district court's holding was premised on its determinations that the state law was inconsistent with 29 U.S.C. § 504(a) because it required no showing of rehabilitation before relief was granted to the defendant and the issuance of the state certificate did not indicate a finding of "trustworthiness or innocent involvement in the underlying crime" required to obtain an exemption under 29 U.S.C. § 504(a). Id. at 220-21. The district court also found it "crucial" that the defendant "admitted to engaging in precisely the type of conduct that Congress had decided should preclude him from holding union office." Id. at 221.

9

The parties agree that there currently is no precedent establishing the standard of review for a reduction motion in this or any other circuit. See e.g., Pet'r Reply 7 n.1 (noting that "the Government does not cite any reduction motion cases because there are none"). The Court is of the view, however, that there is merit to the Government's position that the standard of review for granting a reduction in the duration of the employment disqualification should be at least as high as that for granting an exemption because granting a reduction in a case such as this has the same effect as granting a mass exemption for all five areas of disqualified employment under § 504(a). Nevertheless, the Court need not make a final determination about which of the parties' competing standards of review apply because the petitioner has failed to establish entitlement to relief even under the lower standard of review he advocates.

The petitioner argues that the totality of the circumstances and the success of his rehabilitation warrant granting a reduction because imposition of the full 13-year duration of employment disqualification would be too harsh. In support of his position, the petitioner states that he successfully fulfilled the terms of his cooperation agreement with the Government. Pet'r Mot. 1. The petitioner emphasizes that his assistance was instrumental to obtain guilty pleas from many of his co-defendants and, in fact, counsel for one of the co-defendant's submitted a letter on the petitioner's behalf affirming that fact. Pet'r Reply 12, Attachment C. He also asserts that the lenient sentence imposed by the prior judge in this matter, who has since retired, reflected the Court's qualitative assessment about the importance of the petitioner's cooperation and the weakness of the underlying convictions. Id. at 11. The petitioner also focuses the Court's attention on the facts that he successfully completed his probationary period, is a "respected, engaged, and contributing member of his community," earned a doctorate degree in labor relations and was elected President of the Graduate Alumni Board at the Union Institute

and University, and has worked as a substitute teacher in Fairfax County, Virginia. In addition, the petitioner devotes time to the important role of caring for and assisting his autistic son. Pet'r Mot. 1-3; Pet'r Suppl. Mem. Supp. Mot. 1-3. He also submitted several letters from friends, family and professional acquaintances who offered their comments about his character and aspirations. Pet'r Pretrial Mem. Attachments 2-6. The letters submitted in support of his petition further indicate that he has acted as a marriage counselor or mediator in some capacity and might have started an arbitration/mediation practice in Virginia, although the petitioner did not identify these activities in any of his legal briefs in support of his petition or during the recent hearing.

The Government disputes the notion that the petitioner is rehabilitated and argues that he should be denied a reduction based on the character and gravity of his offenses, which are directly related to service as a union officer or employee. Gov't Opp. 9. According to the Government, the petitioner's offenses "must be regarded as of serious character and precisely the type of corruption the LMRDA was enacted to sanction." Id. at 10. The Government further argues that the sum of the petitioner's activities do not affirmatively show that he can be trusted with responsibility in the prohibited employment capacities covered by 29 U.S.C. § 504(a). Id. at 12. According to the Government, the petitioner's "employment over the last five years has been limited to a few thousand dollars earned as a self-employed mediator of domestic disputes, and he has not demonstrated trustworthiness in an employment setting." Gore Aff. ¶ 3.

The Court shares the Government's concerns about the nature and gravity of the petitioner's crimes, the extent of his rehabilitation and whether granting a reduction in this case would be contrary to the purposes of the statute. The petitioner was tried and convicted of abusing his position as an official for a labor organization by illegally extorting unmarked and unsealed ballots from union members and then voting those ballots in favor of his and his co-

defendants' interests. United States v. Defries, 129 F.3d 1293, 1297 (D.C. Cir. 1997). The petitioner and his co-defendants also tampered with ballots by unsealing the ballots and replacing them with ballots voted in their favor. Id. at 1297-98. Moreover, the petitioner and his co-defendants engaged in these illegal activities during multiple union elections, tainting each of those elections to the detriment of the union's members. Id. at 1297. Consequently, unlike other cases in which a petitioner seeks relief from the effect of § 504(a) after committing a crime wholly unrelated to involvement in a labor organization -- see, for example, Beardsley v. United States, 807 F. Supp. 1192 (W.D. Pa. 1992), in which the petitioner pled guilty to cocaine possession -- the petitioner in this case committed crimes while carrying out his official duties at a labor organization. This is precisely the type of illegal and unethical conduct Congress intended to root out of labor organizations by enacting the Labor-Management Reporting and Disclosure Act.

  The petitioner's activities since his conviction, although commendable, do not demonstrate a degree of rehabilitation that satisfies the Court that a reduction in the duration of employment disqualification under § 504(a) is warranted. While the petitioner used the time since his conviction to complete a doctoral degree, it appears likely that he began his studies before his trial so this was not necessarily a new endeavor pursued in the spirit of rehabilitation. There also is no indication that the petitioner focused his efforts on ethics or other areas of study that might lend greater credence to his argument that he is rehabilitated. The petitioner's employment history since his conviction is not entirely clear beyond a preliminary assertion that he has worked as a substitute teacher for Fairfax County Public Schools, as evidenced by a photocopy of a pay stub that was attached as an exhibit to his original motion. Pet'r Mot. Attachment E. The pay stub documents that the petitioner worked for three-and-a-half hours as a

substitute teacher. No other evidence of this employment was submitted and none of the subsequent legal briefs clarified the scope or duration of his substitute-teaching activities. With the exception of his employment for three-and-a-half hours as a substitute teacher, the only other indication that the petitioner sought employment since his conviction is found in the letters submitted by friends and family indicating that he might have started an arbitration or mediation business. As mentioned previously, however, the petitioner never disclosed this activity in his legal briefs or during the hearing, so the Court is unable to assess the quality and nature of this activity.

The Court finds the record of petitioner's employment since his conviction to be of significance given that he is now asking for relief from the effect of § 504(a) so that he may pursue employment involving labor organizations.[12] The last time the petitioner was steadily employed in a position involving substantive responsibility, however, he was employed at MEBA, where he perpetrated illegal activity against the union. Since that time, there has been no intervening employment to show that the petitioner is now capable of observing the "high standards of responsibility and ethical conduct" that Congress intended to be the hallmark of individuals involved with labor organizations. 29 U.S.C. § 401(b). The Court is not inclined to assume that the mere passage of time, without something more, is enough to show that the petitioner has been rehabilitated and is now entitled to employment involving labor organizations. There also is no evidence that continuing to subject him to the statutory

---

[12] The petitioner never confirmed the exact nature of the employment activities he plans to pursue if he is granted relief from § 504(a), although he acknowledged his "stated interest in mediating or arbitrating labor disputes." Pet'r Reply 8. The petitioner asserts, however, that "section 504 does not forbid, and never has forbidden, [him] from taking a position as a labor arbitrator or mediator." Id. Although there may be merit to this argument, the question is not currently before the Court.

employment disqualification would be unfairly harsh because he is unemployable in any other field.

### III. Petitioner's Claim that his Citizenship Rights have been Restored

An alternative means for the petitioner to secure relief from the employment disqualification imposed by 29 U.S.C. § 504(a) is to show that his citizenship rights have been fully restored.[13] To this end, the petitioner filed a supplement to his original motion to "bring to the Court's attention the fact that his civil rights have been restored." Pet'r Suppl. Mem. Supp. Mot. 1. Attached to that motion was a certificate issued by the Governor of Virginia removing the petitioner's "political disabilities, except the right to ship, transport, possess or receive firearms" and restoring "his rights to vote, hold public office, serve on a jury, and be a notary public." Id. at Attachment B. The petitioner argues that the restoration of his civil rights supports granting his request for a reduction in the duration of the employment disqualification imposed by § 504. Id. at 1. The Government counters by arguing that the petitioner's civil rights have not been fully restored because he is still prohibited from possessing firearms and the restoration of citizenship rights by a state does not restore rights lost by virtue of a federal conviction. Gov't Resp. to Pet'r Suppl. Mem. Supp. 1-2.

There is no controlling precedent that addresses the specific question of whether a petitioner convicted of federal crimes is entitled to relief under § 504(a) upon restoration of his citizenship rights by a state, although the greater weight of the authority suggests that a state's restoration of citizenship rights does not restore citizenship rights lost pursuant to a federal

---

[13] The case law generally refers to the restoration of "civil" rights. The statute at issue, 29 U.S.C. § 504(a), uses the term "citizenship" rights. The parties did not argue that there was any legal significance resulting from any distinction between the terms, so the Court will treat the terms as interchangeable for the purpose of its analysis.

conviction.[14] The determination appears to hinge on whether citizenship rights must be restored by the jurisdiction that convicted the defendant. In this case, although 29 U.S.C. § 504(a) is silent about whether the citizenship rights must be restored by the convicting jurisdiction, the applicable Sentencing Guidelines section dealing with relief under that statute states:

> [A] disqualified person whose citizenship rights have been fully restored to him or her <u>in the jurisdiction of conviction</u>, following the revocation of such rights as a result of the disqualifying conviction, is relieved of the disability.

Sentencing Guidelines § 5J1.1 (emphasis added). Thus, according to the Sentencing Guidelines, the petitioner must show that his citizenship rights were restored under federal law. As a result, although the petitioner in this case may argue that the restoration of his civil rights by the

---

[14] See, for example, <u>Beecham v. United States</u>, 511 U.S. 368 (1994), in which the Supreme Court analyzed "which jurisdiction's law is to be considered in determining whether a felon 'has had civil rights restored' for a prior federal conviction." 511 U.S. at 369. In that case, two defendants were convicted of violating federal firearms statutes and each had his citizenship rights restored by a state. The Supreme Court considered "whether these restorations of civil rights by <u>States</u> could remove the disabilities imposed as a result of [the defendants'] <u>federal</u> convictions." <u>Id.</u> at 370 (emphasis in original). After determining that a choice of law provision in the federal firearms statute required the defendants to show that their civil rights were restored in the convicting jurisdiction, the Supreme Court concluded that the defendants could seek relief from the disability imposed as a result of their federal convictions "only if they have had their civil rights restored under federal law . . . ." <u>Id.</u> at 374.

A similar result was reached in <u>Viverito v. Levi</u>, 395 F. Supp. 47 (N.D. Ill. 1975). That case involved the Employee Retirement Income Security Act of 1974 ("ERISA"), which contains a similar employment disqualification to the one imposed by 29 U.S.C. § 504(a). 395 F. Supp. at 48. In that case, the defendant pleaded guilty in federal court to conspiracy and embezzlement involving a Federal Savings and Loan Association. <u>Id.</u> The defendant was sentenced to three years probation and had his citizenship rights restored by the state of Illinois when his probation was successfully terminated. <u>Id.</u> The district court held that the defendant's "[r]ights of citizenship which are controlled by Federal law have not been restored, however, including the right to serve on a jury and to possess firearms." <u>Id.</u>

Commonwealth of Virginia is an additional fact demonstrating his rehabilitation, he cannot successfully argue that it absolutely relieves him from the employment disability imposed by 29 U.S.C. § 504(a) because his federal citizenship rights have not yet been restored.

## CONCLUSION

Having carefully considered the peculiar facts of this case, all the arguments and the entire record, the Court finds that granting the relief requested by the petitioner would be inappropriate in light of the purposes and policies underlying 29 U.S.C. § 504(a) and the nature and gravity of the petitioner's crimes.  Although the petitioner has engaged in several important activities since his conviction, such as pursuing his education and caring for his autistic son, he has not demonstrated rehabilitation of a quality and character that suggests to the Court that continuing to enforce compliance with § 504(a) would be unfairly harsh.  Accordingly, for the reasons set forth above, the Court will deny the petitioner's motion.  An appropriate Order will accompany this Memorandum Opinion.

March 2nd, 2006

Thomas F. Hogan
Chief Judge